United States District Court
District of Massachusetts

05-11404-4  PBS

| | |
|---|---|
| **Eric Laverriere**<br>   **Plaintiff** | ]<br>]<br>] |
| v. | ]<br>] |
| **Jorge Orta, Thomas Flemming,**<br>**Elizabeth Flemming, Danielle**<br>**Martin, Michael Maher and**<br>**Antonio Mele individually and**<br>**in their official capacities as police**<br>**Officers of the City of Waltham,**<br>**Massachusetts and the City of**<br>**Waltham, Massachusetts**<br>   **Defendants** | ]<br>]<br>]<br>]<br>]<br>]<br>]<br>]<br>] |

<u>Defendant, City of Waltham's,</u>
<u>Memorandum in Support of Its Motion to Dismiss</u>

This case stems from an incident that occurred during the early morning hours on January 1, 2005 when the Waltham Police Department, in the process of investigating possible criminal activity, placed Mr. Eric Laverriere into protective custody while he was on private property.

Pursuant to Fed. R. Civ. P. 12 ( b )(6), the Defendant, City of Waltham, respectfully move this Honorable Court to dismiss all claims asserted against them in this action. The Defendant's motion is grounded in the plain language of the statute, which explicitly permits law enforcement officers to assist an incapacitated person, with or without his consent, to a police station.

1

In the alternative, if the Court agrees with Plaintiff's contention that the statute does not permit the removal of an individual to a police station from a private residence then this Defendant asserts that it is entitled to qualified immunity because Plaintiff's Complaint does not allege the violation of any clearly established right nor does it show a pattern or custom of the Defendant, City of Waltham.

LEGAL ARGUMENT

Judgment must enter for the Defendant where it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claims which would entitle him to relief. International Paper Co., 920 F.2d at 482-483, citing Conley v. Gibson, 355 U.S. 41,45-46 (1957); Rivera-Gomez, 843 F.2d at 635.

A.  *The Defendants' Actions Were Clearly Authorized by the Plain Language of G .L. c. 111B, and Plaintiff's Complaint Should Therefore Be Dismissed.*

Chapter 111B of the Massachusetts General Laws known as the Alcoholism Treatment and Rehabilitation Law, was enacted as a Public Health law, and supplanted a preexisting criminal statute of like tenor. See Commonwealth v. O'Connor, 546 N.E.2d 336, 340 (Mass. 1989).[1] In O'Connor, the Massachusetts Supreme Judicial Court specifically

---

[1] The statute was enacted in response to the Federal Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment, and Rehabilitation Act of 1970. Because of that act, which included the grant of federal funds to participating states, the National Conference of Commissioners on Uniform State Laws approved the Uniform Alcoholism and Intoxication

concluded that, whether judged by concepts of due process, the Fourth Amendment of the Constitution of the United States, or even the more expansive proscription against unreasonable searches and seizures embodied in Article 14 of the Massachusetts Constitution, the protective custody statute as set forth in M.G.L., c. 111 B, § 8, passed constitutional muster.

A review of reported cases that even touched upon the scope and constitutionality of the Massachusetts protective custody statute indicate that not one court has even hinted, much less held, that that statute, as written, was or is unconstitutional. See, Commonwealth v. O'Connor, 546 N.E.2d 336, 340 (Mass. 1989); Ringuette v. Fall River, 888 F.Supp. 258 (D.Mass. 1995); Ringuette v. City of Fall River, 146 F.3d 1 (1st Cir. 1998) (affirming Ringuette v. City of Fall River, 888 F.Supp. 258 (D.Mass. 1995)); Veiga v. McGee, 26 F.3d 1206 (1st Cir. 1994); Manarite v. City of Springfield, 957 F.2d 953 (1st Cir. 1992); Commonwealth v. Damiano, 422 Mass. 10 (1996); Commonwealth v. Collins, 36 Mass.App.(:;t. 25 (1997); Commonwealth v. Carson, 10 Mass.App.Ct. 25 (1983); Stratton v. City of Boston 731 F.Supp. 42 (D.Mass. 1989); Commonwealth v. Hampe, 419 Mass. 31,4 (1995); Commonwealth v. Tameo, 400 Mass. 23 (1987); Commonwealth v. St. Hilaire, 43 Mass.App.Ct. 743 (1997); Commonwealth v. Lerardi, 17 Mass.App.Ct. 297 (1983); Boucher v. Town of Southbridge, 679 F.Supp. 132, 133 (D.Mass. 1988).

---

Treatment Act. M.G.L, c. 111 B, § 8 is consistent with the Uniform Alcoholism and Intoxication Treatment Act in most respects. Some thirty-one states currently have legislation similar to the Massachusetts protective custody law. See generally, *Wellington*, Why Do We Still Lock Up Drunks? Examining the Protective Custody Provision of the Alcoholism Treatment and Rehabilitation Law Of Massachusetts ,17 New Eng. J. on Crim. & Civ. Confinement 371 (1991).

Against this contextual backdrop, Plaintiff cannot reasonably contend that the officers involved in the placing of the Plaintiff in protective custody knew, or reasonably should have known, that their conduct was prohibited.

As one element of this statutory scheme, Section 8 of Chapter 111B authorizes police officers to place an incapacitated individual in custody, either for his own protection or to prevent him from causing damage to property or injury to others, without requiring that he be charged with a crime.

> The statute specifically provides, in relevant part, as follows:
>
> [a]ny person who is incapacitated may be assisted by a police
> officer, with or without his consent to his residence, to a facility or to a police station….
> No person assisted to a police station pursuant to this section shall be held in protective custody against his will; provided, however, that if suitable treatment at a facility is not available, an incapacitated person may be held in protective custody at a police station until he is no longer incapacitated or for a period of not ....
>
> longer than twelve hours, whichever is shorter. ...
> A police officer acting in accordance with the provisions of this section may use such force as is reasonably necessary to carry out his authorized responsibilities. ...
> A person assisted to a facility or held in protective custody by the police pursuant to the provisions of this section, shall not be considered to have been arrested or to have been charged with any crime. ...

M.G.L. c. 111B, § 8.

The statute contains no provision prohibiting the exercise of this authority in a private residence or in any other setting. Moreover, no court, trial or appellate, has interpreted Section 8 to prohibit the police from removing an individual from his own home under the terms of the statute.

Still further the statute clearly states "[p]olice officers, facility administrators or other persons acting in a reasonable manner and pursuant to the provisions of this chapter shall not be held criminally or civilly liable for such acts. See M.G.L. c. 11B,§ 13. (emphasis added)

For purposes of the present motion, the facts of the case as alleged in the Complaint are taken as true. At some point before 3:00 a.m. on January 1, 2005 the Waltham Police Department went into a private residence on Lyman Street in the City of Waltham where the Plaintiff was located, to investigate the possibility that an individual from the residence had thrown a bottle at a police cruiser. The Plaintiff was determined by a police officer to be intoxicated and placed into protective custody. (See Plaintiff's Complaint at ¶ 10)

Mr. Laverriere acknowledged he consumed several beers over the course of the evening. (See Plaintiff's Complaint at ¶ 13)

The purpose of the protective custody statute is to allow law enforcement officials to ensure that an incapacitated individual may be protected, through confinement if necessary, from the risk of injuring himself or others or of causing property damage. The statute states

explicitly that an individual deemed to be incapacitated may, for public safety purposes, be taken by a police officer to one of three settings (his home, a treatment facility, or a police station), and provides that the officer may exercise a reasonable degree of force to accomplish the purposes of the law.

A logical reading of these provisions suggests that law enforcement officers should assist an incapacitated individual to the least restrictive environment consistent with the prevention of the harms posed by the particular situation. In the present case the Police were drawn to the Plaintiff's location by the throwing of a bottle at a police cruiser from a private residence in the City of Waltham. The place went into the residence and spoke to some of the occupants and investigation led the Police to believe that the plaintiff was intoxicated. Mr. Laverriere was not a resident of Massachusetts and had no other place to go on the evening in question. The statute presumes that an incapacitated person may be taken to his home, or permitted to remain there, if the police determine that such a result is consistent with the requirements of public safety. If the officer is not convinced that the home environment can provide the requisite degree of safety, he may require that the individual be taken to a treatment facility or, if placement in such a facility is unavailable, to a police station.

In the present case, the Defendant officers exercised their discretion to take Mr. Laverriere into protective custody after determining that he was incapacitated, and their actions clearly fell within the mandate of the statute. M.G.L. C. 111B contains no provision

prohibiting the imposition of protective custody on the grounds that Plaintiff's incapacity occurred within the confines of a private residence rather than in a public place.

B. *The Defendants Are Entitled to Qualified Immunity Because Plaintiff Cannot Demonstrate A Violation of Any Clearly Established Right.*

The United States Court of Appeals for this 1st circuit has held that qualified immunity shields state officials from civil damage liability under section 1983, insofar as their conduct does not violate "clearly established" rights of which "a reasonable person would have known" at the time of the conduct in question. See Rivera-Ramos v. Roman, 156 F.3d 276, (15t Cir. 1998) citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The First Circuit Court of Appeals has held that the relevant question to be addressed by a trial court in its consideration of a dispositive motion on qualified immunity grounds "'is whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct.'" Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87,91 (1 st Cir. 1994), quoting McBride v. Taylor, 924 F.2d 386,389 (lSt Cir. 1991).

7

Qualified immunity protects public officials from section 1983 civil liability so long as they "acted reasonably under settled law in the circumstances." Hunter v. Bryant, 502 U.S. 224, 228 (1991), citing Anderson v. Creighton, 483 U.S. 635,638-39 (1987). The test is one of objective reasonableness, Anderson at 641, and should be applied where possible by the district judge in advance of trial, since the doctrine of qualified immunity is designed to shield government officials not only from civil liability but from the burdens and expenses of trial itself. Veilleux v. Perschau, 101 F.3d 1,3 (lst Cir.1996), citing Elder v. Holloway, 510 U.S. 510,514-15, (1994); Hunter, 502 U.S. at 228. Public officials are "'entitled to qualified immunity [so long as] their decision was reasonable, even if mistaken.'"Joyce v. Town of Tewksbury, 112 F.3d 19,23 (1997), quoting Hunter, 502 U.S. at 229.

M.G.L. c. 111B, § 8 explicitly permits a police officers to place an incapacitated person in protective custody and escort him to a police station, and nothing in the statute prohibits the imposition of protective custody on the grounds that such incapacity occurred within the confines of a private residence rather than in a public place. In addition, no state or federal trial or appellate court has interpreted Section 8 to prohibit the police from removing an individual from a private residence under the terms of the statute.

In a case examining the lawfulness of the Town of Walpole (Massachusetts) Police Department arriving at a private residence and placing into protective custody an individual who had made repeated telephone calls to the Town's 911 call center the Court dismissed the

case against the Town and Police Officers individually finding that no case had declared the Protective Custody statute unconstitutional in and it can not be contended that the Police Officers much less the Town would know that the protective custody statute was unconstitutional. See Susan M. Lally v. John F. Carmichael , (U.S. District of Massachusetts civil action No. 98-11443-LPC)

As a result, even if the Court were, as a matter of first impression, to interpret the statute to prohibit the conduct complained of here, neither the language of Chapter 111B nor any judicial interpretation of the statute supports a finding of a clearly established right to be free from protective custody while in a private residence. Contrast Ringuette v. City of Fall River, 146 F .3d 1,3 (1st Cir. 1998) (absent direct precedent, explicit statutory provision limiting protective custody to a maximum of twelve hours would normally be sufficient to overcome qualified immunity defense in circumstances where Plaintiff was detained for longer period). Here, the Waltham Police may not be held liable for damages unless Plaintiff can show that it is reasonably well-established, and should therefore have been clear to the Defendants, that their actions in placing Plaintiff in protective custody while in a private residence were unlawful. Since there was no clear violation of the law at all, there certainly was no violation so patent as to deprive the Defendant officers of qualified immunity. Joyce v. Town of Tewksbury, 112 F.3d 19, 23 (1997).

III. <u>CONCLUSION</u>

      For the reasons set forth above the Defendant, City of Waltham, respectfully requests that the Court dismiss all claims asserted against them in this action.

                                    The Defendant,
                                    City of Waltham
                                    By its attorney,

                                    /s? Luke Stanton
                                    _____
                                    Luke Stanton, Esq. BBO# 5481619
                                    John B. Cervone, Esq. BBO# 079900
                                    Asst. City Solicitors
                                    City of Waltham
                                    119 School Street
                                    Waltham, MA 02451
                                    (781) 314-3330